# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# TERRE HAUTE DIVISION

| | |
|---|---|
| SYLVESTER THOMAS, ) <br> ) <br> Petitioner, ) <br> v. ) <br> ) <br> SUPERINTENDENT, Wabash Valley ) <br> Correctional Facility, ) <br> ) <br> Respondent. ) | No. 2:16-cv-00432-JMS-MJD |

## Entry Discussing Petition for Writ of Habeas Corpus and Denying Certificate of Appealability

Once convicted and after exhaustion or waiver of any right to appeal, a defendant is presumed to stand "fairly and finally convicted." *United States v. Frady,* 456 U.S. 152, 164 (1982). For the reasons explained in this Entry, the effort of Sylvester Thomas to show otherwise with respect to his state court convictions fails. His petition for a writ of habeas corpus will therefore be denied. In addition, the Court finds that a certificate of appealability should not issue.

## I. Background

A jury convicted Thomas of felony murder and attempted robbery in Marion County. He was sentenced to an executed term of 60 years. The evidence pertinent to the offenses and aspects of the prosecution were summarized by the Indiana Court of Appeals in Thomas's direct appeal:

> Around 11:45 p.m. on January 7, 2008, police and emergency personnel responded to a report that someone had been shot at an Indianapolis apartment complex. They found Emanuel Jenkins lying on the parking lot outside one of the apartment buildings, suffering from a fatal gunshot wound to his chest.

The police immediately began an investigation. Detective Christine Mannina of the Indianapolis–Metropolitan Police Department interviewed a bystander, Shon Hudson, who told her that he had been inside Jenkins's apartment when he heard a knock at the door followed by two gunshots.

Detective Mannina also interviewed Tasia Lee, who lived with her son in the adjacent apartment. Lee told Detective Mannina that before the shooting, two men had entered her apartment and held her at gunpoint. After Lee became extremely upset and scared, the men told her that "they did not want her but wanted her neighbors." Appellant's App. p. 26. Lee watched while one of the men went to Jenkins's apartment and knocked on the door. Shortly thereafter, the second man jumped from her apartment into the hallway and began firing his handgun.

The next day, on January 8, 2008, Lee notified Detective Mannina that the shooter had come to her place of employment wearing a jacket with either "Thomas Sylvester" or "Sylvester Thomas" written on it. *Id.* at 29. Lee identified Thomas from a photo array as the person who did the shooting.

On January 31, 2008, the State charged Thomas with one count of murder, two counts of criminal confinement, and one count of possession of a firearm by a serious violent offender under Cause Number 49G01–0802–MR–28025 (MR–28025). Forensic testing identified Thomas's DNA on cigarettes left in an ashtray in Lee's apartment. In addition, Lee's telephone records indicated that on the day of the shooting, she had received several calls from Alan Thomas, Thomas's brother and an inmate at the Marion County Jail. When confronted with this evidence, Lee admitted that Alan was her boyfriend and that Thomas had been in her apartment just before the shooting.

On February 9, 2009, the day scheduled for Thomas's trial in MR–28025, Hudson admitted that on the day of the shooting, there was a high-stakes dice game occurring in Jenkins's apartment. Hudson told the police that after the door of Jenkins's apartment was opened, someone ordered the occupants to lie on the floor, and he realized that someone was trying to rob the players of the dice game. In an attempt to thwart the robbery, Hudson fired a gun towards the door of the apartment.

After receiving this new information, the State dismissed the charges in MR–28025. The next day, on February 10, 2009, the State charged Thomas with Count I, felony-murder; Count II, attempted robbery; and Count III, possession of a firearm by a serious violent felon under Cause Number 49G01–0902–MR–24145 (MR–24145).

On April 22, 2009, five days before Thomas's trial was to begin, Thomas filed a motion to dismiss the charges against him, which the trial court denied. The first part of Thomas's bifurcated trial commenced on April 27, 2009. On April 29, a jury found Thomas guilty on Counts I and II. The second part of Thomas's trial

commenced on May 8, 2009, and the trial court found Thomas not guilty on Count III.

*Thomas v. State*, 924 N.E.2d 678, *1-2 (Ind.Ct.App. 2010).

In that direct appeal, the Indiana Court of Appeals considered and rejected the following claims: (1) the trial court abused its discretion when it denied Thomas's motion to dismiss based on the refiling of charges; (2) the trial court abused its discretion in finding that a witness was unavailable and allowing her testimony to be given through her deposition; (3) the trial court abused its discretion by allowing portions of taped jailhouse conversations to be played to the jury; (4) the trial court improperly denied Thomas's motion for a mistrial based on prosecutorial misconduct; (5) the trial court violated Thomas's "right to presence" by individually questioning jurors while he was not present and erred when it denied Thomas's motion for a mistrial based on juror "contamination"; (6) the trial court erred when it did not vacate Thomas's conviction for attempted robbery; and (7) Thomas's sentence was inappropriate under Indiana Appellate Rule 7(b).

Thomas promptly filed an action for post-conviction relief, which was denied on August 1, 2016. While that action was pending, however, Thomas sought permission from the Indiana Court of Appeals to pursue a successive post-conviction petition. That request was denied without prejudice on July 12, 2016. As noted, the post-conviction relief petition was denied three weeks later. Thomas did not appeal the denial of his action for post-conviction relief.

This action was filed on November 14, 2016, and has been fully at issue since March 13, 2017. The claims Thomas asserts are these:

> (1) the trial court abused its discretion when it denied Thomas's motion to dismiss based on the refiling of charges;

(2) the trial court abused its discretion in finding that a witness was unavailable and allowing her testimony to be given through her deposition;

(3) the trial court abused its discretion by allowing portions of taped jailhouse conversations to be played to the jury;

(4) the trial court improperly denied Thomas's motion for a mistrial based on prosecutorial misconduct;

(5) the trial court violated Thomas's "right to presence" by individually questioning jurors while he was not present and when it denied Thomas's motion for a mistrial based on juror "contamination";

(6) the trial court erred when it merged the attempted robbery conviction with the felony murder conviction instead of vacating the conviction for attempted robbery;

(7) the 60-year sentence is inappropriate;

(8) he was denied the effective assistance of trial counsel when his attorney failed to present evidence of the grant of immunity to State's witness Tasia Lee;

(9) he was denied the effective assistance of trial counsel when his attorney failed to offer into evidence a Wal-Mart surveillance tape;

(10) he was denied the effective assistance of trial counsel when his attorney failed to properly investigate jail phone calls that led to the perjured testimony of Tasia Lee;

(11) he was denied the effective assistance of counsel in his direct appeal when his attorney failed to include certain claims in the appeal;

(12) he was denied the effective assistance of counsel in his direct appeal when his attorney failed to raise the issue of insufficient evidence to sustain a conviction; and

(13) he was denied the effective assistance of counsel in his direct appeal when his attorney failed to adequately raise the issue of prosecutorial misconduct in the dismissal of the original charge and the filing of new charges.

## II. Applicable Law

A federal court may grant habeas relief only if the petitioner demonstrates that he is in custody "in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a). Thomas's habeas petition is governed by provisions of 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").

A viable habeas claim pursuant to § 2254(a) necessarily precludes a claim which is not based on alleged noncompliance with federal law. *Wilson v. Corcoran*, 131 S. Ct. 13, 16 (2010).

Thomas's claims that he is entitled to habeas relief based on the violation of certain provisions of the Indiana Constitution are not cognizable under § 2254(a) and are therefore **dismissed.**

"By its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." *Harrington v. Richter*, 562 U.S. 86, 98 (2011). The three exceptions are: (1) the state court's decision was contrary to clearly established federal law; or (2) there was an unreasonable application of clearly established federal law; or (3) the decision was based on an unreasonable determination of the facts. *Id.* at 100 (citing 28 U.S.C. §§ 2254(d)(1), (2)); *see also O'Quinn v. Spiller*, 806 F.3d 974, 977 (7th Cir. 2015) ("We ask only whether the [state court's] decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or 'was based on an unreasonable determination of facts in light of the evidence presented in the State court proceeding.'") (quoting 28 U.S.C. § 2254(d)(1), (2)).

Under the "unreasonable application" prong of the AEDPA standard, a habeas petitioner must demonstrate that although the state court identified the correct legal rule, it unreasonably applied the controlling law to the facts of the case. *Williams v. Taylor*, 529 U.S. 362, 407 (2000); *see also Badelle v. Correll,* 452 F.3d 648, 653 (7th Cir. 2006). The Seventh Circuit "has defined 'objectively unreasonable' as lying well outside the boundaries of permissible differences of opinion and will allow the state court's decision to stand if it is one of several equally plausible outcomes." *Burgess v. Watters,* 467 F.3d 676, 681 (7th Cir. 2006).

Federal habeas review exists only "as 'a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.'" *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (per curiam). AEDPA "prevents federal habeas 'retrials'"

and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). The requirements of AEDPA "create an independent, high standard to be met before a federal court may issue a writ of habeas corpus to set aside state-court rulings." *Uttecht v. Brown,* 555 U.S. 1, 10 (2007) (citations omitted). "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997), and 'demands that state-court decisions be given the benefit of the doubt,' *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*)." *Renico v. Lett*, 559 U.S. 766, 773 (2010). As one court has explained, "[i]t is this Court's obligation to focus "on the state court decision that previously addressed the claims rather than the petitioner's freestanding claims themselves." *McLee v. Angelone,* 967 F.Supp. 152, 156 (E.D.Va. 1997).

In addition to the foregoing substantive standard, "[i]t is the rule in this country that assertions of error in criminal proceedings must first be raised in state court in order to form the basis for relief in habeas. Claims not so raised are considered defaulted." *Breard v. Greene,* 523 U.S. 371, 375 (1998) (citing *Wainwright v. Sykes,* 433 U.S. 72 (1977)).

> Procedural default can occur in several ways, "but two are paradigmatic." *Richardson v. Lemke*, 745 F.3d 258, 268 (7th Cir. 2014). A state prisoner can procedurally default a federal claim if he fails to "fairly present" it "throughout at least one complete round of state-court review, whether on direct appeal of his conviction or in post-conviction proceedings." *Id.* Procedural default can also occur if the state court rejects a federal claim based on a state procedural rule "that is both independent of the federal question and adequate to support the judgment." *Id.* (quotation marks omitted).

*Clemons v. Pfister,* 845 F.3d 816, 819 (7th Cir. 2017) (citing *Thomas v. Williams*, 822 F.3d 378, 384 (7th Cir. 2016)). "[T]he burden is on the petitioner to raise his federal claim in the state court at a time when state procedural law permits its consideration on the merits. . . ." *Bell v. Cone,* 543

U.S. 447, 451 n.3 (2005); *see also Hogan v. McBride,* 74 F.3d 144, 146 (7th Cir. 1996) ("Forfeiture under § 2254 is a question of a state's internal law: failure to present a claim at the time, and in the way, required by the state is an independent state ground of decision, barring review in federal court."). Thus, "[a] federal claim that was not raised in the state courts is procedurally barred and must be dismissed." *Henderson v. Cohn*, 919 F.2d 1270, 1272 (7th Cir. 1990) (citing *United States ex rel. Simmons v. Gramley,* 915 F.2d 1128, 1132 (7th Cir. 1990)).

Procedural default, although otherwise a bar to federal habeas review, may be excused in certain circumstances. "A federal court may excuse a procedural default if the habeas petitioner establishes that (1) there was good cause for the default and consequent prejudice, or (2) a fundamental miscarriage of justice would result if the defaulted claim is not heard." *Johnson v. Foster,* 786 F.3d 501, 504 (7th Cir. 2015) (internal citations omitted).

### III. Discussion

#### A. Defaulted Claims

As noted by the respondent, Thomas failed to present claims 1, 4, 5, 6, 8, 9, 10, 11, 12 and 13 to the Indiana Supreme Court. This failure constitutes procedural default. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 848 (1999)("a prisoner who fails to present his claims in a petition for discretionary review to a state court of last resort" has not properly exhausted the claims for purposes of 28 U.S.C. § 2254(b)(1); the habeas petitioner's failure to present her "claims to the Illinois Supreme Court in a timely fashion has resulted in a procedural default of those claims"); *Hough v. Anderson,* 272 F.3d 878, 892-93 (7th Cir. 2001) (petitioner's failure to present issue to Indiana Supreme Court constituted procedural default); *Lane v. Richards,* 957 F.2d 363, 366 (7th Cir.) (issues not presented on direct appeal would be barred by procedural default), *cert. denied,*

113 S. Ct. 127 (1992). Thomas has not shown the presence of circumstances permitting him to overcome that consequence of this default. He argues that he lacked sufficient time to file a timely appeal, but this explanation is only a conclusion. Moreover, he managed to file an additional motion for leave to file a second or successive action for post-conviction relief within weeks after the post-conviction relief petition had been denied and points to no concrete "external impediment" to filing a notice of appeal with the trial court within the permitted 30-day period. His further argument that the failure to reach the merits of these claims would constitute a fundamental miscarriage of justice, but he has not made a persuasive showing of his actual, factual innocence. Hence, the merits of these claims will not be reached.

### B. Non-defaulted Claims

Thomas fully exhausted habeas claims 2, 3, and 7 by including them in his petition to transfer following the decision of the Indiana Court of Appeals in his direct appeal. These are the claims that the denial of the right to confrontation was violated, that evidence of jail telephone calls was improperly admitted, and that his sentence was inappropriate. The latter two claims, however, implicate only issues of state law and hence are not cognizable in this proceeding. *Perruquet v. Briley,* 390 F.3d 505, 511 (7th Cir. 2004)("To say that a petitioner's claim is not cognizable on habeas review is thus another way of saying that his claim 'presents no federal issue at all.'") (quoting *Bates v. McCaughtry,* 934 F.2d 99, 101 (7th Cir. 1991)); *Morgan v. Krenke*, 232 F.3d 562 (7th Cir. 2000) (a federal habeas courts may only review a state evidentiary ruling if it is erroneous and is of a constitutional magnitude, *i.e.,* the state court's ruling must be so prejudicial as to compromise the habeas petitioner's due process right to a fundamentally fair trial creating the likelihood that an innocent person was convicted); *Koo v. McBride*, 124 F.3d 869, 875 (7th Cir.

1997) (the issue of sentencing within the parameters of state law is ordinarily outside the realm of federal habeas review).

This leaves for resolution the claim that Thomas's right of confrontation was violated. This claim was rejected on the merits by the Indiana Court of Appeals and thus will be analyzed here under the deferential standards established by AEDPA.

The circumstances associated with Thomas's Confrontation Clause claim were described in his direct appeal:

> In the instant case, on April 27, 2009, the first day of Thomas's trial, the State informed the trial court that one of its witnesses had given birth the previous Saturday and was still hospitalized. Apparently, the witness's pregnancy was no surprise to either party because it was noticeable during a deposition taken a month before by Thomas's counsel. In addition, the witness had experienced complications during delivery, and the State provided a medical record documenting her hospitalization.
> After the first day of trial had concluded, the prosecutor spoke with the witness and learned that she had been released from the hospital. The witness stated that she would be able to testify the following day; however, later in the evening, the witness told Detective Christine Minka that she did not expect to testify the next day because her doctor had told her that she was not supposed to be on her feet for six weeks. After learning this information, the prosecutor called the witness and emphasized that her testimony was needed and offered to have Detective Minka bring her to court. The witness stated that she would come and testify.
> On April 28, 2009, the second day of trial, Detective Minka gave sworn testimony that when she arrived at the witness's residence to escort her to the trial, the witness's mother told her that the witness "was sick as a dog and she'd been on Vicodin most of last night . . . ." Tr. p. 147. Detective Minka also testified that she had gathered the witness's hospital records, which were turned over to the trial court. According to Detective Minka, the hospital records did not contain the witness's diagnosis or the conditions of her release.
> Following Detective Minka's testimony, the trial court concluded that based upon her testimony and the other evidence, the witness was "unavailable given her medical condition." *Id.* at 150. The trial court explained that although "[i]t's not exactly clear as to what her complications may or may not be . . . I think the State has made a good faith due diligence attempt to get [the witness] into court . . . ." *Id.*

*Thomas,* 924 N.E.2d 678, *5-6.

The Sixth Amendment to the United States Constitution provides that "in all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. In *Crawford v. Washington*, 541 U.S. 36, 61 (2004), the Supreme Court held that the Confrontation Clause bars the admission of out-of-court testimonial statements made by an unavailable witness and offered for their truth if the defendant did not have an opportunity to cross-examine that witness. A witness is "unavailable" when the prosecution can demonstrate that it made a "good-faith effort to obtain [the witness's] presence at trial." *Barber v. Page,* 390 U.S. 719, 724–25 (1968). "The lengths to which the prosecution must go to produce a witness . . . is a question of reasonableness." *Hardy v. Cross,* 132 S. Ct. 490, 494 (2011) (internal quotation marks omitted). The Confrontation Clause "does not require the prosecution to exhaust every avenue of inquiry, no matter how unpromising," as it is "always possible to think of additional steps that the prosecution might have taken" to produce a witness at trial. *Id.* at 132 S. Ct. 490, 495 (2011) (per curiam).

It is the State's burden to produce evidence demonstrating unavailability, which it can do by detailing its efforts to procure the witness's presence and showing that despite its efforts, the witness remained unavailable. *See United States v. Matus–Zayas,* 655 F.3d 1092, 1102 (9th Cir. 2011). The Supreme Court's decision in *Cross* is instructive. There, the victim had testified at the habeas petitioner's first trial but could not be located to testify at the retrial. *See Cross,* 132 S. Ct. at 492. The prosecution's pre-trial efforts to locate the witness had included personal visits to the victim's home at all hours of the day and night about once every three days; visits to her father's home; a visit to an ex-boyfriend's home forty miles away; in-person and phone conversations with

her relatives in English and Spanish; and inquiries to her school, immigration authorities, and numerous state and county agencies and prisons. *See id.* at 492–93. The state appeals court upheld the trial court's finding that the State had conducted a good-faith, diligent search for the victim. In so ruling, the state appeals court found it "evident" that the victim "was in hiding and did not want to be located." *See id.* at 493 (internal quotation marks omitted). The Supreme Court held that the determination that the State had conducted the requisite good-faith search was not an unreasonable application of its Confrontation Clause precedents. *See id.* at 494.

The state court disposition of Thomas's claim was reasonable. The Indiana Court of Appeals first recognized *Crawford* as setting forth the controlling federal law. *Thomas,* 924 N.E.2d 678, *5. It then recognized that under Indiana law "'[a] witness is unavailable for purposes of the Confrontation Clause requirement only if the prosecution has made a good faith effort to obtain the witness's presence at trial.'" *Id.* (quoting *Garner v. State,* 777 N.E.2d 721, 724 (Ind. 2002)). The analysis provided by the Indiana Court of Appeals was the following:

> Although we acknowledge that the evidence was somewhat unclear, the trial court could reasonably infer that the witness was suffering from postpartum complications and was, perhaps, intoxicated from pain medication. Additionally, the prosecutor had contacted the witness several times to secure her attendance at trial and went so far as to send Detective Minka to escort her to the trial. Under these circumstances, we cannot say that the trial court's conclusion that the witness was unavailable was erroneous.
> Nevertheless, Thomas argues that the State did not make a good faith effort to secure the witness's attendance at trial because it did not issue a subpoena when it became apparent that the witness might not testify. Thomas points out that the witness had failed to appear at other court hearings, therefore, "it is not unreasonable to make the State subpoena this witness to secure her attendance." Appellant's Br. p. 15. Thomas contends that because the State did not issue a subpoena, the trial court's determination that the witness was unavailable is erroneous.

> While we recognize that in some circumstances, a good-faith effort may require the State to issue a subpoena to secure a witness's attendance at trial, the circumstances herein did not require it. As discussed above, the evidence tends to indicate that the witness was suffering from postpartum complications and was taking prescription pain medication. Accordingly, the trial court could reasonably determine that the State had made a good faith attempt to secure the witness's presence at trial and did not err when it concluded that the witness was unavailable and allowed a redacted version of her deposition to be admitted into evidence.

*Thomas v. State*, 924 N.E.2d 678 (Ind. Ct. App. 2010)(footnote omitted).

The decision of the Indiana Court of Appeals was a reasonable application of controlling federal law because that Court: (1) recognized the pertinent circumstances leading up to the absence of the witness; and (2) concluded from those circumstances that "the trial court could reasonably determine that the State had made a good faith attempt to secure the witness's presence at trial." Thus, the use of the witness's deposition in place of her live testimony complied with the federal standards established by the United States Supreme Court and did not violate Thomas's Sixth Amendment right to confrontation. And because it is a reasonable application of the controlling federal standard, "[u]nder AEDPA . . . it cannot be disturbed." *Hardy v. Cross,* 132 S. Ct. 490, 495 (2011).

### IV. Conclusion

This Court has carefully reviewed the state record in light of Thomas's claims and has given such consideration to those claims as the limited scope of its review in a habeas corpus proceeding permits. The lone cognizable claim which was properly preserved in the Indiana state courts does not warrant relief in light of the deferential standard required by the AEDPA. *Harrington v. Richter*, 562 U.S. 86, 101 (2011)("A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the

correctness of the state court's decision.") (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *Stern v. Meisner*, 812 F.3d 606, 610 (7th Cir. 2016) ("In other words, [the habeas petitioner] must show a complete absence of reasonableness in the [state] appellate court's decision.") (citing *Harrington,* 562 U.S. at 98).

Having applied the appropriate standard of review, and having considered the pleadings and the expanded record, Thomas's petition for writ of habeas corpus must be **denied.**

Judgment consistent with this Entry shall now issue.

### V. Certificate of Appealability

Pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the *Rules Governing § 2254 Proceedings*, and 28 U.S.C. § 2253(c), the Court finds that Thomas has failed to show that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right" and "debatable whether [this court] was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Court therefore **declines** to issue a certificate of appealability.

IT IS SO ORDERED.

Date: May 19, 2017

_____
Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

SYLVESTER THOMAS
111746
NEW CASTLE - CF
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
NEW CASTLE, IN 47362

Kelly A. Loy
OFFICE OF THE INDIANA ATTORNEY GENERAL
kelly.loy@atg.in.gov